**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES MAHAN, | ) | CASE NO.  1:13-CV-00165 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JASON BUNTING, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, James Mahan ("Mahan"), challenges the constitutionality of his conviction in

the case of *State v. Mahan*, Cuyahoga County Court of Common Pleas Case No. CR 525553.

Mahan, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C.

§ 2254 on January 23, 2013.  On May 29, 2013, Warden Jason Bunting ("Respondent") filed a

Motion to Dismiss.[1]  (ECF No. 7.)  Mahan filed a Traverse on July 17, 2013.  (ECF No. 13.)  For

reasons set forth in detail below, it is recommended that Mahan's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

---

[1]  Although Respondent captioned his filing a Motion to Dismiss, it addresses all three of
Mahan's grounds for relief, and does not argue that they are procedurally defaulted or
time-barred.  As such, the Court construes Respondent's filing as an Answer/Return of
Writ.

2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court

summarized Mahan's conviction as follows:

> [*P2]  In this case, defendant was indicted with 95 counts, including pandering
> sexually-oriented matter involving a minor, illegal use of a minor in nudity-
> oriented material or performance, and possessing criminal tools.  The charges
> stemmed from the presence of certain files found on defendant's home computer
> as a result of an investigation conducted by Rick McGinnis ("McGinnis").
> McGinnis is an investigator assigned to Ohio's Internet Crimes Against Children
> Task Force ("ICAC").  McGinnis utilized software known as "Peer Spectre,"
> which identified an internet protocol ("IP") address associated with three files that
> he recognized from his experience as being child pornography.  McGinnis
> prepared an affidavit and obtained a search warrant for defendant's residence.

> [*P3]  During the course of the proceedings, defendant filed a motion to compel
> certain information from the state, including a mirror image forensic copy of Peer
> Spectre and any and all instruction/operation and/or training manuals associated
> with Peer Spectre, and the software's source code.  Defendant believed the
> information would reveal the functionality and calibration of the software, and
> asserted it was material to his defense in order to challenge the software's
> reliability and methodology.

> [*P4]  In opposition, the state maintained the requested discovery was not subject
> to disclosure by the state pursuant to Crim.R. 16.  Specifically, the state indicated
> that Peer Spectre is maintained under the strict control and ownership of William
> Wiltse and is restricted to use by law enforcement.  Wiltse supplied an affidavit
> wherein he averred that "without the source code, it is not possible to authenticate
> the function of the application or validate its 'calibration.'"  Wiltse averred that
> the source code is not distributed.  Officers are trained how to validate the
> findings of Peer Spectre by "conducting similar searches on the Gnutella network
> using freely available software applications."  The state confirmed that it did not
> own or have in its possession a copy of the source code and maintained that it
> could not produce what it did not have.  The trial court denied the motion to
> compel discovery from the state and instructed that defendant could contact the
> software company regarding issues pertaining to programming.

> [*P5]  The trial court conducted a hearing on defendant's motion to suppress and
> the motion was denied.  Defendant then entered a plea of no contest and was
> found guilty.  The trial court imposed an aggregate prison sentence of 16 years
> comprised of the following: eight year concurrent prison terms on 11 counts to be
> served consecutively with eight year concurrent prison terms on 70 other counts;
> all concurrent with four and one year prison terms on the remaining counts.

*State v. Mahan*, 2011-Ohio-5154, 2011 Ohio App. LEXIS 4259 (Ohio Ct. App., Oct. 6, 2011).

## II.  Procedural History

**A.    Conviction**

On June 19, 2009, a Cuyahoga County Grand Jury charged Mahan with eighty-one counts of pandering sexually-oriented matter involving a minor in violation of Ohio Revised Code ("O.R.C.") § 2907.322(A)(1), thirteen counts of illegal use of minor in nudity-oriented material or performance in violation of O.R.C. § 2907.323(A)(1), and one count of possessing criminal tools in violation of O.R.C. § 2923.24(A). (ECF No. 7-1, Exh. 1.)  All counts carried forfeiture specifications.  *Id.*  After initially pleading not guilty (ECF No. 7-2, Exh. 2), Mahan, represented by counsel, entered a plea of no contest to all charges on June 9, 2010.  (ECF No. 7-11. Exh. 11.) On August 25, 2010, the trial court sentenced Mahan to an aggregate term of sixteen years incarceration.  (ECF No. 7-12, Exch. 12.)

**B.    Direct Appeal**

On September 13, 2010, Mahan, through counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court").  (ECF No. 7-14, Exh. 14.) Mahan raised the following assignments of error:

1.    The trial court erred when it denied the defendant-appellant's motion to suppress.

2.    The trial court erred when it denied the defendant-appellant's motion to compel and failed to hold a hearing or issue findings of fact or conclusions of law.

3.    The defendant-appellant's right to due process of law as guaranteed by Article 1, Section 10 of the Ohio State Constitution and the Fourteenth Amendment to the United States Constitution was violated when he was sentenced to a consecutive sentence of [sic] sixteen (16) years.

-3-

4. The court's imposition of consecutive sentences, without making appropriate findings and reasons as required by R.C. § 2929.14, violated the defendant-appellant's right to due process of law as guaranteed by Article I, Section 10 of the Ohio State Constitution and the Fourteenth Amendment to the United States Constitution.

(ECF No. 7-15, Exh. 15.)

On April 7, 2011, in a journal entry, the state appellate court remanded the case, ordering a new sentencing entry that identifies the property to be forfeited. (ECF No. 10-2, Exh. 18.)

On May 18, 2011, Mahan, represented by counsel, was resentenced and again received an aggregate prison term of sixteen years. (ECF No. 7-17, Exh. 19.) Mahan forfeited the computer and equipment used in the commission of the offense. *Id.*

Although Respondent has not furnished the Court with a copy of Mahan's subsequent appeal, it is clear from the decision that Mahan raised the same issues as in his first appeal.

On October 6, 2011, the state appellate court affirmed Mahan's conviction.[2] (ECF No. 7-18, Exh. 20.)

Thereafter, Mahan filed a Notice of Appeal with the Supreme Court of Ohio raising the following propositions of law:

I. When the State utilizes automated software to conduct warrantless searches online, the burden is on the State to demonstrate, by a preponderance of the evidence that the warrantless search is subject to one of the judicially recognized exceptions, including the plain-view doctrine.

II. Pursuant to Crim. R. 16, when the State utilizes and relies upon results generated by automated software as the basis for a search warrant and as evidence in its case-in-chief, the defense should be allowed to conduct an independent examination of the software and its source code.

---

[2] By agreement of all parties, the case was remanded to correct the sentencing entry to reflect Mahan's classification as a Tier II rather than Tier III sex offender. *Mahan*, 2011-hio-5154 at ¶¶1, 65.

-4-

III.   The Appellant's Right to Due Process of Law was violated when he was
       sentenced to a consecutive sentence of sixteen (16) years.

(ECF No. 7-20, Exh. 22.)

On February 22, 2012, the appeal was dismissed as not involving any substantial

constitutional question.  (ECF No. 7-22, Exh. 24.)

**C.   Federal Habeas Petition**

On January 23, 2013, Mahan filed a Petition for Writ of Habeas Corpus asserting the

following grounds for relief:

**GROUND ONE**: Petitioner's right to due process of law and to a fair trial were
violated when the trial court denied his motion to compel discovery and failed to
issue findings of fact and conclusions of law.  UNITED STATES
CONSTITUTION AMENDMENTS XIV, VI

I.    In denying the motion to compel the trial court abused its discretion, caused
      the Petitioner to suffer prejudice at the suppression hearing, and prevented
      him from fully and fairly developing his Fourth Amendment claims.

II.   The state courts failed to address the Petitioner's request for the
      mirror-image forensic copy of the software and its associated manuals.

III.  The appellate court's reliance on *Budziak* is an unreasonable application of
      federal law.

IV.   The appellate court's reliance on the provisions of C.R. 16 as the controlling
      principle is contrary to clearly established federal law.

**GROUND TWO**: Petitioner's right to be free from unreasonable search and
seizure and to due process of law were violated when the state court denied his
motion to suppress. UNITED STATES CONSTITUTION AMENDMENTS IV,
XIV

I.    The trial court issued findings of fact and conclusions of law that were not
      fairly supported by the record and the appellate court incorporated those
      findings in its opinion affirming the denial of the motion.

II.   The state court's finding of probable cause for issuance of a search warrant
      is not supported by the record and is an unreasonable application of federal

-5-

law.

III.   The state courts improperly relied on information not found in the 'four corners of the affidavit' to bolster their findings of probable cause.

IV.   The trial court's findings that the *Leon* 'good faith exception' would apply even in the absence of probable cause is an unreasonable application of federal law as the magistrate was misled by substantive omissions and inaccuracies in the affidavit.

V.   Key factual issues were left unresolved in the state court proceedings.

**GROUND THREE**: Petitioner's right to due process of law was violated when he was sentenced to an aggregate term of sixteen years in prison. Such punishment is excessive in that it makes no measurable contribution to the goals of punishment and is grossly out of proportion to the severity of the crime. UNITED STATES CONSTITUTION AMENDMENTS V, XIV.

(ECF No. 1.)

### III.  Review on the Merits[3]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3]  Respondent has not argued that Mahan's petition contains unexhausted or procedurally defaulted claims.

-6-

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable

application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, —– U.S. —––, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A.     Grounds One and Two: Motion to Compel and Motion to Suppress**

In his second ground for relief, Mahan argues his due process rights were violated when the trial court denied his motions to suppress the evidence seized from his computer.  (ECF Nos. 1 & 13.)  Generally, Mahan asserts the state courts erred by issuing findings of fact and conclusions of law that were not supported by the record and contrary to testimony offered at the

suppression hearing.  (ECF No. 13 at 7-14.)  While the exact contours of Mahan's claim in

ground one are unclear, Mahan does argue that the denial of his motion to compel frustrated his

ability to argue the merits of his motion to suppress, thereby resulting in prejudice.  (ECF No. 13

at 4.)  Therefore, the Court views Mahan's arguments in grounds one and two as interrelated and

they will be addressed together.[4]  Respondent argues that ground two is not cognizable upon

federal habeas review, as Mahan was afforded an opportunity to fully and fairly litigate his

Fourth Amendment claims under *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d

1067 (1976).  (ECF No. 7 at 12-15.)

Generally, a writ of habeas corpus cannot be granted on the ground that a petitioner's

Fourth Amendment rights were violated if the petitioner had an opportunity to present the claim

in state court.  *See Stone*, 428 U.S. at 494 (1976); *Wallace v. Kato*, 549 U.S. 384, 395 n. 5, 127

S.Ct. 1091, 166 L.Ed.2d 973 (2007); *accord Ewing v. Ludwick*, 134 Fed. Appx. 907, 911 (6th

Cir. 2005).  The United States Supreme Court has held that "where the State has provided an

opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

search or seizure was introduced at his trial."  *Stone*, 428 U.S. at 494.  The Sixth Circuit has

found that the determination as to whether a petitioner has had  "an opportunity for full and fair

litigation of a Fourth Amendment claim" requires a federal district court to make two separate

inquiries.  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted).  First, the district

court should ascertain "whether the state procedural mechanism, in the abstract, presents the

_____

[4]  To the extent Mahan seeks to raise a separate and independent claim regarding
discovery in ground one asserting violations of due process and a fair trial, those
arguments will be addressed in the following section of this report and recommendation.

opportunity to raise a fourth amendment claim." *Id*.  Second, the district court must ascertain "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.*

Mahan's defense counsel filed a motion to suppress relating to the evidence taken from his residence, arguing that all evidence seized should be suppressed because the search warrant was not supported by probable cause in that the supporting affidavit failed to provide sufficient information as to the functioning of the Peer Spectre software.  (ECF No. 7-7, Exh. 7.)  The trial court held a suppression hearing, where Mahan's counsel cross-examined the state's witness, Detective Rick McGinnis, and argued the merits of his motion.  (ECF No. 6-3 at 76-125, 136-159, 171-174.)  The record reflects that the trial judge also asked numerous questions during the course of the proceedings.  (ECF No. 6-3.)  Subsequently, the trial court explained on the record the basis for denying the motion to suppress.  (ECF No. 6-3 at 175-197.)

In addition, after Mahan raised the issue on direct appeal, the state appellate court conducted a lengthy and thorough analysis, and found no error in the trial court's denial of the motion to suppress:

> [*P7] "I. The trial court erred when it denied the defendant-appellant's motion to suppress."
>
> [*P8] "Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact.  An appellate court is to accept the trial court's factual findings unless they are clearly erroneous.  We are therefore required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. The application of the law to those facts, however, is subject to de novo review."  *State v. Polk*, (Internal citations omitted) Cuyahoga App. No. 84361, 2005 Ohio 774, at ¶2.
>
> [*P9]  Under this asserted error, defendant raises multiple issues that allege that: (1) the trial court erred in its findings of fact and conclusions of law; (2) the warrantless use of Peer Spectre constituted an unlawful search in violation of his

-10-

constitutional rights; (3) the search warrant was issued without probable cause because it relied on information obtained from use of Peer Spectre; and (4) the probable cause finding for the search warrant was based upon an affidavit that contained substantive inaccuracies and omissions.

[*P10]  The trial court conducted an evidentiary hearing on defendant's motion to suppress at which McGinnis was the only witness.

[*P11]  McGinnis testified as follows: He obtained training on internet investigations of child pornography from Fox Valley Technical College, and the training included peer-to-peer network searches.  As part of his training, he was instructed on the use of Peer Spectre, which is exclusively restricted to law enforcement. Peer Spectre is a search program that operates on the Gnutella network, which is a public peer-to-peer network where people share their computer files back and forth.  The Gnutella network enables people to log onto the internet to search, find, retrieve, and download shared files from other computers, including child pornography.  The search will reveal an IP address and SHA1 values, n2 and from this information the user can download the desired file from the computer(s) that offered to share it.

> [Note 2] SHA1 stands for Secure Hash Algorithm 1, which consists of 32 digits and functions as a file's digital signature or unique identifier, which cannot be altered. McGinnis testified that SHA1 values are accurate in identifying a file to the 160th degree, which is "better than DNA."  There is a certainly exceeding 99.99 percent that two or more files with the same SHA1 value are identical copies of the same file regardless of the file name.

[*P12]  McGinnis repeatedly testified that all the information he obtained from using Peer Spectre he could have obtained using other publicly available software, such as LimeWire or Phex, the only difference being that with the other software he would have to manually enter the data to keep searching. McGinnis stated that Peer Spectre saves time.

[*P13]  In short, Peer Spectre conducts an automated search that identifies file sharing of known or suspected child pornography associated with a specific IP address.  While McGinnis acknowledged that he did not create Peer Spectre and was unaware of the technical aspects of it, he testified that he was trained how to operate it and understood that it reads publicly available advertisements from computers that are sharing files over the Gnutella peer-to-peer network.

[*P14]  Each time that Peer Spectre is used by a law enforcement agency anywhere in the world, the results are compiled in a centralized server.  The information that is logged into the central database includes the IP address, the port that it came from, and the date and time of the search. Law enforcement

-11-

agencies are then enabled to query the information that Peer Spectre recorded into the central server.

[*P15]  On May 23, 2008, McGinnis used this technology to search for IP addresses that were active in Ohio in May of 2008 and had been recorded as sharing known or suspected child pornography. McGinnis retrieved a "hit list" for the IP addresses at issue, which identified each file's SHA1 value, the date and time the file was made available for sharing, and the file's size, geographical location, and description. The records identified a particular IP address as a computer that made available for sharing known or suspected child pornography on May 12, 2008.  From his experience, McGinnis recognized some of the SHA1 values as known child pornography.  McGinnis nonetheless personally reviewed each file just to ensure that it was what he believed it to be.  Portions of these files were played during defendant's suppression hearing and corroborated McGinnis's testimony as to their content of child pornography.

[*P16]  Each IP address is unique to a certain computer at a given time. McGinnis subpoenaed the internet service provider ("ISP") for the subscriber associated with that IP address at that time.  He received the customer name and account holder, which was defendant, however, this information does not identify who was actually using the computer at the relevant time.  Therefore, McGinnis was not targeting defendant but instead he sought and obtained a search warrant for the residential address based upon his belief that a computer at that address contained the suspected contraband.

[*P17]  McGinnis prepared a lengthy affidavit setting forth the basis upon which he was seeking the search warrant, which the court subsequently issued. McGinnis stated that this search warrant was executed in conjunction with approximately 60 other similar search warrants as part of Operation Safety Net. During the search, the known child pornography files that had been identified by Peer Spectre were found on defendant's computer.

[*P18]  McGinnis testified that this was the first time he had used information gained from Peer Spectre to obtain search warrants, however, he was aware of Peer Spectre's accuracy from other law enforcement agencies.  By the suppression hearing, it had become McGinnis's experience that whenever they located a computer through the use of Peer Spectre, they found child pornography on the computer unless the hard drive had been wiped clean.  Under cross-examination, McGinnis stated that he could not testify to the technological processes Peer Spectre uses when it is functioning.  However, he knew that Peer Spectre logs onto the same peer-to-peer network as any other publicly available software in order to perform its functions.  The defense elicited an admission from McGinnis that he did not know if the files were located in a "shared folder."

[*P19]  While McGinnis more than once testified that he did not know if Peer Spectre went beyond shared folders of a computer, he consistently confirmed that the information recorded by Peer Spectre is "identical to the information that you would get from running a search in LimeWire if you were running it at that time that the IP address had a computer sharing file."  Peer Spectre simply automated the process.  There was no evidence introduced that this publicly available software programs search beyond shared files on the network; in fact, McGinnis testified that he was unaware of that ever happening.

[*P20]  With regard to defendant's assignment of error, it is well settled that "the protections of the Fourth Amendment only extend to places where 'the defendant can claim a reasonable expectation of privacy.'"  *United States v. Norman* (Sept. 24, 2010), M.D. Ala. No. 2:09-CR-118-WKW, 2010 U.S. Dist. LEXIS 100572, quoting *Katz v. United States* (1967), 389 U.S. 347, 360, 88 S. Ct. 507, 19 L. Ed. 2d, 576, other citations omitted.  "'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.'"  *Id.*, quoting *Katz*, 389 U.S. at 351.

[*P21]  The state maintains that the use of Peer Spectre without a warrant did not violate defendant's constitutional right to be free from unreasonable searches and seizures because it simply automated the ability to search information that had been placed in the public domain.  In other words, the program searches those files that have been placed in a public file-sharing network.  Therefore, the first issue becomes whether defendant had a reasonable expectation of privacy in the subject files.

[*P22]  At least one federal court that has confronted this issue concluded there is no reasonable expectation of privacy over files searched using Peer Spectre.  *Norman*, *supra* (finding "a 'search' is not at issue unless the defendant first establishes that he or she had a reasonable expectation of privacy in the area(s) searched.  In other words, Mr. Norman must establish that he has standing to assert a Fourth Amendment violation in the first place. This he cannot do").

[*P23]  In *Norman*, the court observed, "courts addressing this issue have uniformly held that there is no reasonable expectation of privacy in files made available to the public through peer-to-peer file-sharing networks."  *Id.*, citing *United States v. Stults* (C.A.8, 2009), 575 F.3d 834, 842-843; *United States v. Ganoe* (C.A.9, 2008), 538 F.3d 1117, 1127; *United States v. Perrine* (C.A.10, 2008), 518 F.3d 1196, 1205; *United States v. Ladeau* (Apr. 7, 2010), D.Mass. No. 09-40021-FDS, 2010 U.S. Dist. LEXIS 34218; *United States v. Brese* (Apr. 9, 2008), W.D. Okla. No. CR-08-52-D, 2008 U.S. Dist. LEXIS 28916.

[*P24]  Defendant asserts that McGinnis's inability to testify as to the specific functionality of Peer Spectre wrongly placed the burden of proof on him.

-13-

However, defendant has not challenged or refuted the evidence that indicated the files from an IP address assigned to his computer were being shared over a peer-to-peer network on May 12, 2008, and therefore he has not established a reasonable expectation of privacy.  Where there is no reasonable expectation of privacy over the shared files, the technical aspects of the law enforcement software are not at issue.  *Norman*, supra.

[*P25]  Next we address defendant's argument that, as a means of establishing probable cause, McGinnis's affidavit could not be based on information he obtained through Peer Spectre in the absence of testimony concerning the technical functionality of the software.  However, "probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates* (1983), 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527; *State v. Akers*, Butler App. No. CA2007-07-163, 2008 Ohio 4164.

[*P26]  Crim.R. 41(C) provides in part:

[*P27]  "(1) A warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record or an affidavit or affidavits communicated to the judge by reliable electronic means establishing the grounds for issuing the warrant.  The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. * * *

[*P28]  "(2) * * * The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. * * *."

[*P29]  The gravamen of defendant's position is that probable cause was lacking because McGinnis was unable to testify as to the technical functionality of Peer Spectre and whether it was somehow able to search beyond what is shared, because he did not know Peer Spectre's standard of error.  Defendant has not provided us with a single authority, in Ohio or otherwise, that found suppression was warranted where law enforcement obtained a search warrant based on the use of technology that searches open peer-to-peer networks.  Instead, defendant equates information gathered from Peer Spectre to information gathered from a confidential informant.  As such, defendant maintains, McGinnis was required to set forth underlying circumstances from which he concluded that the software was credible or reliable.

-14-

[*P30]  Assuming without deciding that the use of computer software is equivalent to obtaining information from a confidential informant, the affidavit supplied a probable cause basis to believe that the software was credible and reliable.

[*P31]  In *Gates v. Illinois* (1983), 462 U.S. 213, 217, 103 S.Ct. 2317, 76 L.Ed.2d 527, the United States Supreme Court considered "the application of the Fourth Amendment to a magistrate's issuance of a search warrant on the basis of a partially corroborated anonymous informant's tip."  In *Gates*, the Court reasoned, "[a]n informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report. * * * [T]hese elements * * * should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id*. at 230.

[*P32] "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*. at 239.  For example, an officer's statement that he has received "reliable information from a credible person" and does "believe" that contraband would be found at a home, is insufficient standing alone to create probable cause to support a search warrant. *Id*.  Conversely, "an affidavit relying on hearsay 'is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.' * * * [E]ven in making a warrantless arrest an officer 'may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'" *Id*. at 242.

[*P33]  *Gates* directs appellate courts to employ a totality of the circumstances analysis to determine whether probable cause supported the issuance of a search warrant. *Id*. at 238. *Gates* also provides that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Id*. at 236, other citation omitted; see, also, *State v. George* (1989), 45 Ohio St.3d 325, 330, 544 N.E.2d 640.

[*P34]  There is a presumption of the validity of a warrant affidavit, which the defendant can overcome by an offer of proof showing the affidavit contained a knowing, intentional, or reckless falsity. *State v. Roberts* (1980), 62 Ohio St.2d 170, 178, 405 N.E.2d 247, citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667.  However, the validity of the affidavit will not be overcome by such showing if, when the "affidavit material alleged to be false is excluded from the affidavit, there remains sufficient content in the affidavit to

-15-

support a finding of probable cause." *Id*., citing *Franks*, 438 U.S. at 171-172.

[*P35]  The questions before us are (1) whether, under the totality of the circumstances, the affidavit provided a substantial basis for the judge's conclusion that there was a fair probability that child pornography would be found on a computer in the defendant's residence, and (2) whether there remains sufficient content in the affidavit to support the warrant after any false information is excluded.  In each regard, we find in the affirmative.

[*P36]  McGinnis's affidavit and testimony adequately provided a substantial basis for concluding that the information obtained from Peer Spectre was credible and reliable, including, but not limited to the following: McGinnis has many years of experience investigating internet child pornography. He was aware of Peer Spectre's accuracy based on information he learned from other agencies. He was trained specifically on the use of Peer Spectre and knew that Peer Spectre searches peer-to-peer, or file sharing, networks.  McGinnis had used other software programs to search peer-to-peer networks and obtained the same information he got from using Peer Spectre.  He has never known the other programs to search beyond shared files.

[*P37]  McGinnis located an IP address recorded as sharing files on May 12, 2008, three of which he recognized as being child pornography from his years of experience.  He independently corroborated this by viewing the files.  McGinnis obtained the account holder information associated with that IP address from the ISP.  Accordingly, there was a sufficient factual basis to establish probable cause to believe that a computer containing child pornography files was located at defendant's residence.

[*P38]  Defendant maintains that probable cause is lacking unless law enforcement downloaded or confirmed that the suspect files from the computer were contraband before obtaining the search warrant.  In order to support a probable cause determination, the totality of the circumstances need only indicate a fair probability, not a certainty, that the contraband will be found at the place to be searched.  *United States v. Cartier* (C.A.8, 2008), 543 F.3d 442.  In *Cartier*, the court upheld the denial of a motion to suppress where the FBI relied on information supplied by the Spanish Guardia that defendant had downloaded child pornography from a peer-to-peer file sharing network.  Cartier, like defendant, argued that probable cause for the search warrant was lacking because the FBI had not verified the reliability of the software prior to obtaining the warrant.  The court rejected the argument finding the evidence established that the FBI knew the Spanish Guardia "to be a reliable law enforcement agency that used a trustworthy means of computer forensics."  *Id*. at 446.  McGinnis's testimony likewise establishes his knowledge that Peer Spectre is a trustworthy source of information used by law enforcement agencies.

-16-

[*P39] Defendant's first assignment of error is overruled.

*Mahan*, 2011-Ohio-5154 at ¶¶7-39.

Mahan points to nothing in the state court record suggesting his ability to present his claims was frustrated through a failure of Ohio's review process. Clarifying the inquiry into whether a defendant had a full and fair opportunity to present a Fourth Amendment claims, the Sixth Circuit recently held that "the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Thus, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.* Rather, "[w]e must presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim." *Id.* In sum, the Sixth Circuit explained that, in considering whether a habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, "[o]ur approach, and the majority rule, asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?" *Id.* at 640. *See also Harrington v. Warden, London Correctional Inst.*, 2013 WL 5944193 at * 4 (S.D. Ohio Nov. 5, 2013).

Here, the trial court conducted a suppression hearing, heard argument from counsel, and provided an explanation from the bench as to why Mahan's motion was denied. (ECF No. 6-3.) While Mahan believes the trial court should have provided a more comprehensive analysis of its factual and legal findings, the Sixth Circuit has made clear that a state court "need do no more

-17-

than 'take cognizance of the constitutional claim and rule in light thereof.'" *Riley*, 674 F.2d at 525 (quoting *Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977)).  The state courts satisfied this standard.  Mahan apparently believes that the state courts achieved an incorrect result.  That, however, does not provide a ground for habeas relief.  *See, e.g., Good*, 729 F.3d at 640 ("Applying our test to [petitioner's] case is straightforward. [Petitioner] could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it.  He presented it again to the state appellate court, and the appellate court rejected it once more.  That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*."); *accord Putrus v. Smith*, 2013 U.S. Dist. LEXIS 164923 (E.D. Mich. Nov. 20, 2013) ("[T]he relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided.  Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim 'is simply irrelevant.'") (*citing Brown v. Berghuis*, 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009)); *see also Cabrera v. Hinsley*, 324 F.3d 527, 531 (7th Cir. 2003) ("Absent a subversion of the hearing process, we will not examine whether the judge got the decision right."); *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002) ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the bar [set out in the *Stone* decision].")

Furthermore, there is no evidence to rebut the presumption that the procedure utilized was fair.  To the extent Mahan believes the suppression hearing was tantamount to a "sham proceeding" due to his inability to access the Peer Spectre source code, this Court disagrees.  As explained by the state appellate court, evidence indicated files were being shared from an IP address assigned to Mahan's computer over a peer-to-peer network on the date in question.

-18-

*Mahan*, 2011-Ohio-5154 at ¶24.  The detective testified that he confirmed the files being shared were suspected child pornography based on each file's SHA1 value.  *Id*. at ¶15.  This evidence supported the state appellate court's finding that there was no reasonable expectation of privacy in the shared files and, therefore, the technical aspects of the Peer Spectre source code were immaterial.  *Id*. at ¶24.  There is nothing unreasonable about this determination, and, therefore, any argument that the suppression hearing was a sham proceeding without the source code is untenable.  Moreover, Mahan has not identified any clearly established federal law, as determined by the Supreme Court, that conflicts with the state court's holding.  Nor has Mahan identified a decision of the Supreme Court with a materially indistinguishable set of facts that decided the matter differently than the state court.

In the instant matter, Mahan raised his Fourth Amendment claim before the state trial and appellate courts.  As there was no failure in the review process, his first and second grounds for relief are not cognizable.

**B.    Ground One: Motion To Compel, Due Process, and Fair Trial**

In ground one, Mahan also argues that his right to due process was violated when the trial court denied his motion to compel discovery and failed to issue findings of fact and conclusions of law.  (ECF No. 1.)  Mahan asserts that the discovery sought was essential to his defense and that the denial of production violated his right to a fair trial.  (ECF No. 13 at 4.)

Respondent argues Mahan's no contest plea bars this ground for relief and avers that Mahan can only challenge whether his plea was knowing and voluntary.  (ECF No. 7 at 10-11.)  Mahan, however, does not raise any claim pertaining to the knowing or voluntary character of his plea herein, and did not do so in state court.  Mahan responds that he did not enter an

-19-

unconditional guilty plea, but rather a plea of no contest.  (ECF No. 13 at 5.)

As the Sixth Circuit recently reiterated, "a voluntary and unconditional guilty plea [generally] 'bars any subsequent non-jurisdictional attack on the conviction.' " *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) (quoting *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012)). The Supreme Court has explained this is so because:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  The Supreme Court has reiterated this principle on several occasions.  *See, e.g., United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) *overruled in part on other grounds by Puckett v. U.S.*, 556 U.S. 129, 138 fn 1, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (citing *Tollett* and other cases) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").  Thus, "after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth*, 692 F.3d at 495.  *See also United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012).

Here, Mahan pled no contest to all ninety five charges.  (ECF No. 7-11, Exh. 11.)  As Respondent correctly noted, the instant habeas Petition does not claim a jurisdictional defect nor

does it raise any challenge to the voluntary or intelligent character of Mahan's no contest plea. Respondent argues that ground one should be dismissed on this basis alone. The Court notes, however, that the case law cited by Respondent (and set forth above) discusses waiver in the context of a "voluntary and *unconditional*" plea. *Werth*, 692 F.3d at 495 (emphasis added). Here, Mahan argues that his no contest plea was made expressly to preserve his appellate rights. (ECF No. 13 at 5.) While Mahan does not elaborate on his argument, he does direct the Court to defense counsel's assertion during the plea hearing that Mahan was entering "a no contest plea, reserving the right to appeal the denial of the suppression motion ..." (ECF No. 6-5 at 7; *see also* ECF No. 6-4 at 24-25.) The Court further notes that, under Ohio law, the entry of a no contest plea does not waive a criminal defendant's right to appeal a trial court's ruling on a pretrial motion. *See* Ohio Crim. R. 12(I) (providing that "[t]he plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence"). In *Nelson v. Eberlin*, 2005 U.S. Dist. LEXIS 15237 at *8 (N.D. Ohio, Jul. 28, 2005), the court noted that Ohio Crim. R. 12(I) did not preclude appellate review of pretrial motions where a no contest plea was entered and, therefore, "Petitioner's plea of no contest will not preclude him from federal habeas review." The *Nelson* court observed that because the petitioner entered a plea of no contest to all counts in the indictment, he "maintained his right to assert that the trial court erred in denying his motion to suppress." *Id*.

In *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), the Supreme Court carved out an exception to *Tollett*'s general rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to pretrial proceedings.

-21-

In that case, the defendant pled guilty in state court to the charge of attempted possession of dangerous drugs after the trial court denied his motion to suppress evidence seized at the time of his arrest.  *Id*. at 284.  At the sentencing hearing, defendant indicated his intention to appeal both his conviction and the denial of his motion to suppress.  *Id.* at 285.  Appeal of the trial court's denial of his suppression motion was authorized by New York Code Crim. Proc. § 813-c, which provided that an order denying a motion to suppress evidence obtained as a result of unlawful search and seizure "may be reviewed on appeal from a judgment of conviction notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty." *Id*.

After his state appeals were unsuccessful, defendant filed a petition for writ of habeas corpus in federal court.  The district court granted the petition, and the Second Circuit affirmed. The Supreme Court granted *certiorari* on the limited issue of "a defendant's right to file a federal habeas corpus petition challenging the lawfulness of a search or the voluntariness of a confession or presenting other constitutional claims when a State provides for appellate review of those issues after a guilty plea." *Id*. at 287.

In finding defendant had not waived his right to federal habeas review regarding the denial of his motions to suppress, the Supreme Court explained that an exception to *Tollett*'s general rule of waiver "might be proper when a State decides to permit a defendant to appeal from an adverse ruling in a pretrial hearing despite the fact that his conviction is based on a guilty plea." *Id.* at 288.  The Court noted the justification for such an exception "lies in the special nature of the guilty plea" under New York law:

> In most States a defendant must plead not guilty and go to trial to preserve the opportunity for state appellate review of his constitutional challenges to arrest, admissibility of various pieces of evidence, or the voluntariness of a confession. A defendant who chooses to plead guilty rather than go to trial in effect

deliberately refuses to present his federal claims to the state court in the first instance.  *McMann v. Richardson, supra*, at 768, 90 S.Ct., at 1447.  Once the defendant chooses to bypass the orderly procedure for litigating his constitutional claims in order to take the benefits, if any, of a plea of guilty, the State acquires a legitimate expectation of finality in the conviction thereby obtained.  *Cf. Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837.  It is in this sense, therefore, that ordinarily 'a guilty plea represents a break in the chain of events which has preceded it in the criminal process.'  *Tollett v. Henderson, supra*, 411 U.S., at 267, 93 S.Ct., at 1608.

New York, however, has chosen not to treat a guilty plea as such a 'break in the chain of events' with regard to certain types of constitutional claims raised in pretrial proceedings.  For a New York defendant whose basic defense consists of one of those constitutional claims and who has already lost a pretrial motion to suppress based on that claim, there is no practical difference in terms of appellate review between going to trial and pleading guilty.  In neither event does the State assert any claim of finality because of the judgment of conviction.  In either event under New York procedure the defendant has available the full range of state appellate review of his constitutional claims.  As to those claims, therefore, there is no 'break' at all in the usual state procedure for adjudicating constitutional issues.  The guilty plea operates simply as a procedure by which the constitutional issues can be litigated without the necessity of going through the time and effort of conducting a trial, the result of which is foreordained if the constitutional claim is invalid.  The plea is entered with the clear understanding and expectation by the State, the defendant, and the courts that it will not foreclose judicial review of the merits of the alleged constitutional violations. [footnote omitted]

* * *

Because of the entirely different expectations surrounding Newsome's plea and the completely different legal consequences flowing from it, earlier guilty-plea cases holding that '(t)he focus of federal habeas inquiry is the nature of the advice (of counsel) and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity,'  *Tollett v. Henderson, supra*, at 266, 93 S.Ct., at 1608, are simply inapposite.  Newsome has satisfied all the prerequisites for invoking the habeas corpus jurisdiction of the federal courts. [footnote omitted] He is no less entitled to federal review of his constitutional claim than is any other defendant who raises his claim in a timely fashion, in accordance with state procedure, and who pursues his claim through all available levels of state appellate review.

*Id.* at 289-292.  Thus, the Supreme Court held that "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the

-23-

defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Id.* at 293.

Here, Ohio law provides that a defendant who pleads no contest to a criminal charge may nonetheless challenge on appeal a trial court's ruling on a pretrial motion. This law is embodied not only in Ohio's Criminal Rule of Procedure 12(I), but also in the Supreme Court of Ohio's recognition and enforcement of this rule in *State v. Luna*, 2 Ohio St.3d 57, 442 N.E.2d 1284 (Ohio 1982) (holding that, pursuant to Ohio Crim. R. 12(I), a plea of no contest pursuant to a negotiated plea agreement does not waive a defendant's right to appeal a trial court's ruling on a pretrial motion). Moreover, like the defendant in *Lefkowitz*, Mahan's counsel specifically indicated at the plea and sentencing hearing that he intended to preserve Mahan's appellate rights.

Under similar circumstances, federal courts within this Circuit have considered the merits of habeas claims unrelated to the voluntary or intelligent character of a guilty or no contest plea. *See e.g. Hillman v. Beightler*, 2010 WL 2232640 (N.D. Ohio April 19, 2010) (considering petitioners' Fourth Amendments habeas claims relating to denial of pretrial motions to suppress despite the fact petitioners pled no contest); *McCune v. Ludwick*, 2011 WL 52605 at * 3 (E.D. Mich Jan. 7, 2011) (citing *Lefkowitz,* finding that "[b]ecause the petitioner specifically reserved his appeal of the identification and Fourth Amendment claims, the Court finds that he has not waived review of those claims by this Court" despite the fact that he entered a no contest plea). The Court, in light of the above, shall assume the *Lefkowitz* exception applies to Mahan's habeas claims.

Mahan asserts that the denial of his motion to compel violated his rights to due process

and a fair trial.  (ECF Nos. 1 & 13.)  It is unclear whether Mahan is attempting to raise a *Brady*

claim.  "In the seminal case of *Brady v. Maryland*, the Supreme Court held that 'the suppression

by the prosecution of evidence favorable to an accused upon request violates due process where

the evidence is material either to guilt or to punishment . . . .'"  *Ross v. Pineda*, 2013 U.S. App.

LEXIS 25481 at **33-34 (6th Cir. 2013), citing 373 U.S. 83, 87 (1963). "Fundamental

guarantees of due process require the government to provide defendants with evidence it

possesses that is exculpatory and material to the defense."  *United States v. Tavera*, 719 F.3d

705, 710 (6th Cir. 2013) (finding a *Brady* violation exists when three conditions are met: "The

evidence at issue must be favorable to the accused, either because it is exculpatory, or because it

is impeaching; that evidence must have been suppressed by the State, either willfully or

inadvertently; and prejudice must have ensued.'") (*citing Strickler v. Greene*, 527 U.S. 263,

281-82 (1999)).  Mahan, however, never raised a *Brady* claim before the state courts.  As such it

is unexhausted and was never fairly presented.

Nonetheless, had Mahan raised such a claim, it would fail on its merits.  As explained by

the Sixth Circuit Court of Appeals, "*Brady* obviously does not apply to information that is not

wholly within the control of the prosecution.  There is no *Brady* violation where a defendant

knew or should have known the essential facts permitting him to take advantage of any

exculpatory information,' or where the evidence is available . . . from another source, because in

such cases there is really nothing for the government to disclose."  *Coe v. Bell*, 161 F.3d 320,

344 (6th Cir. 1998) (internal quotations omitted), *cert. denied*, 528 U.S. 842 (1999); *accord*

*Owens v. Guida*, 549 F.3d 399 (6th Cir.  2008); *Abdur'Rahman v. Colson*, 649 F.3d 468, 474 (6th

Cir. 2011).  Here, the state appellate court, when denying the motion to compel, noted that the

-25-

prosecutor maintained it did not have possession, custody, or control of the information concerning the Peer Spectre source code sought by Mahan. *Mahan*, 2011-Ohio-5154 at ¶46. Moreover, Mahan has failed to demonstrate that other materials sought were exculpatory or capable of impeaching witnesses against him.

Mahan's argument in state court was based largely upon an alleged violation of Ohio Crim R. 16, which governs discovery in Ohio criminal prosecutions. First, "assuming that the prosecutor did violate Ohio Crim. R. 16, such a claim is not cognizable on habeas, because it is not a constitutional violation." *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *accord Hicks v. Collins*, 384 F.3d 204, 220 (6th Cir. 2004) ("To the extent Hicks premises his argument upon Ohio Criminal Rule 16(b)(1)(a)(ii), there is no constitutional violation cognizable on habeas.") Second, to the extent Mahan is asserting some form of federal constitutional right to discovery in criminal cases, he cites no law to support such a proposition. (ECF No. 13 at 4-7.) Conversely, there is considerable case law standing for the proposition that there is no constitutional right to discovery in a criminal case. The Supreme Court has observed that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *accord United States v. Ruiz*, 536 U.S. 622 (2002); *Warlick v. Romanowski*, 367 Fed. App'x. 634, 643 (6th Cir. 2010) ("It is well-settled that there is no general constitutional right to discovery in a criminal case.")

For the reasons stated above, Mahan's first ground for relief is not cognizable to the extent it asserts a general constitutional right to discovery and meritless to the extent it attempts to argue a *Brady* violation.

### C.    Ground Three: Due Process

In ground three of his petition, Mahan asserts that he was deprived of due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution, when he received an aggregate sentence of sixteen years.  (ECF No. 1 at 8.)  Mahan asserts that such a sentence is excessive and is grossly out of proportion to the severity of the crime.  *Id.*

In his Traverse, Mahan maintains that his sentence was unduly harsh, and asserts that comparable offenders received significantly more lenient sentences.  (ECF No. 13 at 14-16.)  In addition, Mahan argues that the sentencing judge failed to consider the purposes of Ohio's felony sentencing statute or properly weigh mitigating factors resulting in a sentence that constituted an abuse of discretion.  *Id.*  Conversely, Respondent's position is that Mahan's claim is not cognizable upon federal habeas review.  (ECF No. 7 at 15-19.)

There is no dispute that Mahan's sentence falls within the statutory range, and even Mahan concedes that courts have discretion to impose a sentence within that range.  (ECF No. 13 at 15.)  "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2$^d$ Cir. 1992); *Townsend v. Burke*, 334 U.S. 736 ( 1948) ("The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); *accord Kerr v. Smith*, Case No. 3:07-cv-2990, 2009 WL 88054 at * 15 (N.D. Ohio Jan. 12, 2009) ("Claims which arise out of a state trial court's sentencing decision are not generally cognizable upon federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.") (*quoting Lucey v. Lavigne*, 185 F.Supp.2d 741, 745 (E.D. Mich.

-27-

2001)).  As such, the Respondent is correct that Mahan's claim is simply not cognizable upon

federal habeas review.  Neither can Mahan challenge the interpretation and application of Ohio's

sentencing laws, as "a challenge to a state court's interpretation and application of Ohio's

sentencing laws is not cognizable in a federal habeas corpus action."  *Rettig v. Jefferys*, 557 F.

Supp. 2d 830, 838 (N.D. Ohio 2007) (*citing Howard v. White*, 76 Fed. Appx. 52, 2003 WL

22146139, at *2 (6th Cir. 2003)); *Kipen v. Renico*, 65 Fed. Appx. 958, 2003 WL 21130033 (6th

Cir. 2003).

       In his Traverse, Mahan, for the first time, attempts to raise an Eighth Amendment

argument and suggests that his sentence is tantamount to cruel and unusual punishment.  (ECF

No. 13 at 14.)  The Court declines to consider a new argument not raised in Mahan's habeas

petition, especially in light of the fact that such an argument was not fairly presented before the

state courts.  (ECF Nos. 7-20, Exh. 22 at 14-15; 7-15, Exh. 15 at 32-39.)  To fairly present a

claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See*

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present

his claim to the state courts as a federal constitutional issue--not merely as an issue arising under

state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  Though Mahan claimed there

was a due process violation before the state courts, his arguments were based on state law and

never invoked the Eighth Amendment's prohibition against cruel and unusual punishment.  Even

considered on the merits, a sentence does not "run afoul of the Eighth Amendment merely

because it is disproportionate to the sentences received by others who committed the same or

similar crimes."  *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003) ("A sentence within

the maximum set by statute generally does not constitute cruel and unusual punishment.")

(*quoting Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).

Consequently, ground three of the habeas petition is not cognizable.

### IV. Conclusion

For the foregoing reasons, it is recommended that Mahan's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: February 3, 2014



### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**